*In re* MARRIAGE OF GERALDINE L. PANOZZO, Petitioner-Appellee, and RAYMOND J. PANOZZO, Respondent-Appellant.

First District (1st Division)   No. 79-1574

Opinion filed March 2, 1981.

Raymond J. Panozzo, of Dolton, for appellant, *pro se.*

Irving Goodman, of Chicago, for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Geraldine L. Panozzo (petitioner) filed a complaint for dissolution of marriage on the ground of physical cruelty. Raymond J. Panozzo (respondent) appeared by his former counsel and answered the complaint. On April 25, 1978, a judgment was entered in favor of petitioner for dissolution of the marriage. All financial and property matters were reserved for future hearing. The judgment provided "there is no just reason for delaying enforcement or appeal." Ill. Rev. Stat. 1979, ch. 110A, par. 304(a).

On March 22, 1979, after trial, a supplemental judgment was entered disposing of property matters. More than one year after entry of the judgment for dissolution, and on April 20, 1979, respondent filed à verified motion to vacate both the judgment for dissolution and the supplemental judgment on property rights. This motion was registered by the clerk of the circuit court on June 22, 1979. Upon denial of this motion, respondent filed notice of appeal directed to both judgments and to a number of other orders in the case. We will review the merits of each judgment separately. We are constrained to note that pro se representation, although apparently indispensable, adds considerably to our task of terminating litigation.

I.

■■ As shown above, the judgment for dissolution of marriage entered April 25, 1978, disposed of fewer than all of the claims between these parties. The judgment included "an express written finding that there [was] no just reason for delaying enforcement or appeal." (Ill. Rev. Stat. 1979, ch. 110A, par. 304(a).) Therefore, the judgment was final and appealable. (See *In re Marriage of Lentz* (1980), 79 Ill. 2d 400, 403 N.E.2d 1036.) The post-trial motion made by respondent to vacate the judgment for dissolution, filed April 20, 1979, and registered on June 22, 1979, was not filed in apt time within the applicable 30-day period. (Ill. Rev. Stat. 1979, ch. 110, par. 68.3.) Therefore, the post-trial motion did not stay the time for filing a notice of appeal from the judgment entered April 25, 1978. *Fultz v. Haugan* (1971), 49 Ill. 2d 131, 135, 273 N.E.2d 403. See also *English v. English* (1979), 72 Ill. App. 3d 736, 741, 393 N.E.2d 18.

■■ Since the post-trial motion was filed more than 30 days after the final judgment for dissolution of marriage, the motion will be necessarily

construed as having been filed under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 72). See *Coronet Insurance Co. v. Jones* (1977), 45 Ill. App. 3d 232, 235, 359 N.E.2d 768, and other authorities there cited. See also *Pennington v. Pennington* (1975), 27 Ill. App. 3d 344, 351, 326 N.E.2d 431.

Due diligence by the petitioner is an indispensable element of a successful petition under section 72 of the Civil Practice Act. Respondent was fully aware of the final judgment for dissolution of marriage entered April 25, 1978. The post-trial motion was not filed by respondent until April 20, 1979, and was registered on June 22, 1979. This filing was approximately 2 years after entry of the final judgment for dissolution. A number of decided cases require dismissal of a petition under section 72 which fails to show due diligence. *Diacou v. Palos State Bank* (1976), 65 Ill. 2d 304, 357 N.E.2d 518; *Illinois Marine Towing Corp. v. Black* (1979), 74 Ill. App. 3d 909, 913-14, 393 N.E.2d 707.

Another indispensable element of a successful petition under section 72 is the showing of a meritorious defense. A petitioner who seeks to vacate a judgment more than 30 days after its rendition must show in his petition "that he has a meritorious defense to the claim on which the judgment is based." *Graf's Beverages of Illinois, Inc. v. Tauber* (1977), 50 Ill. App. 3d 1047, 1051, 366 N.E.2d 150, and cases there cited.

■■ Although it is difficult to comprehend the verbiage in the petition to vacate, it may well be said that it raises the issue that the dissolution judgment was void. If so, respondent's " 'section 72 petition is not subject to an objection that the [respondent] did not show due diligence.' " *(Joseph A. Thorsen Co. v. Evans* (1980), 82 Ill. App. 3d 1119, 1123, 403 N.E.2d 666, quoting *Hoopingarner v. Peric* (1975), 28 Ill. App. 3d 53, 57, 328 N.E.2d 171, *appeal denied* (1975), 60 Ill. 2d 597, and cases there cited.) If respondent so contends, he is attempting a collateral attack upon the judgment for dissolution. In such case " '[t]he error of law must be apparent from an examination of the record, as the court cannot look into the evidence in the case * * * and in a chancery case that record is confined to the pleadings, process and decree.' " *Thorsen*, 82 Ill. App. 3d 1119, 1123, quoting *Collins v. Collins* (1958), 14 Ill. 2d 178, 183, 151 N.E.2d 813, and authorities there cited.

In the instant case, a complete examination of the pleadings, the process, and the judgment leaves no doubt that the judgment is not void. The issue of dissolution of marriage is justiciable so that the circuit court had jurisdiction over the subject matter of the judgment. (Ill. Const. 1970, art. VI, §9.) Respondent had filed a general appearance and appeared in court with his counsel. The respondent was present at the hearing, and he and one of his several former attorneys participated therein without raising any issue as to the jurisdiction of the court. (See *Community Bank*

*& Trust Co. v. Pavlich* (1980), 84 Ill. App. 3d 1080, 406 N.E.2d 164.) We conclude the trial court had full and complete jurisdiction for entry of the judgment of dissolution. The judgment for dissolution of marriage, entered April 25, 1978, is therefore affirmed.

For the sake of completeness we will add parenthetically that we have examined the transcript of testimony taken on the issue of dissolution of the marriage. We find petitioner proved two acts of physical cruelty by respondent without conflicting evidence. We conclude the findings in the judgment for dissolution are supported by the manifest weight of the evidence.

## II.

We will next consider the contentions of the parties regarding the supplemental judgment with reference to property disposition entered March 22, 1979. Respondent contends the supplemental judgment deprived respondent "of money and property without due process of Law" and the order allowing attorney's fees to petitioner's attorney to be paid by the respondent "has no basis in law or fact." Petitioner has taken a cross-appeal contending that she is entitled to the entire marital home and seeking reversal of an allowance of attorney's fees which the trial court ordered petitioner to pay her former attorney.

The parties were married on September 11, 1970. A girl was born to them on August 29, 1971, and a boy on March 12, 1973. Petitioner's two children by a former marriage, a girl born August 8, 1962, and a boy born December 15, 1965, were adopted by respondent.

The parties are owners of a marital home. The ground was purchased by a contribution of $10,000 made by petitioner combined with her weekly savings from household funds. The home was built on one lot and the adjoining ground is owned by the parties. The testimony shows the present value of this real estate is $74,900 and the adjacent lot is valued at $13,000. Petitioner performed various physical labor in helping to build the house. The second floor of the house remains unfinished. The judgment order directed sale of the adjacent lot and division of the proceeds to pay attorney's fees with the surplus to be divided equally between the parties.

The evidence also shows petitioner is a registered nurse with gross annual income of $16,000 and take-home pay of from $450 to $500 twice a month. Petitioner supplies health insurance for herself and the children. She has no other property and she has debts slightly in excess of $2500. The real estate taxes on the house and adjoining lot have not currently been paid. Respondent has been employed by Pullman Standard Company for 18 years. He makes net wages of $250 per week. He also makes sporadic overtime pay.

Testimony by a psychiatrist and a social service caseworker shows a stormy life between these parties. Petitioner charges she was assaulted by the respondent and he was arrested and placed under supervision for one year. There is evidence respondent threatened petitioner's daughter. A psychiatrist examined the parties and testified petitioner should be given custody of the children.

The caseworker found the home in good order and concluded petitioner took good care of the children. Respondent expressed a negative opinion to her regarding the character of the children. The witness ascertained that all of the children had difficulties as regard their relation with respondent. The witness described respondent as "almost irrational." She expressed the strong opinion that petitioner should receive custody of the children.

The supplemental judgment entered March 22, 1979, granted custody of the children to the petitioner subject to stated visitation rights. Respondent was directed to convey all of his interest in the marital home to petitioner. No maintenance was awarded to petitioner. Respondent was given a lien on the property for $38,950. This lien was to be paid upon the first to occur: if petitioner remarried; gave up residence in the home; if petitioner cohabited with another person on a continuing basis; or when the youngest child became 18 years old or was emancipated.

The respondent was directed to pay $400 per month for child support in equal payments on the 1st and 15th days of each month. Petitioner was to pay ordinary medical expenses and respondent was to defray extraordinary expenses. Respondent's employer was directed to pay petitioner $929.50 from the proceeds of an arbitration award. All rights to respondent's pension plan were vested in him.

Insofar as we can ascertain from respondent's brief, he apparently contends he was deprived of due process of law because the trial court had no authority to order a lien on the marital home. On the contrary, petitioner urges in her cross-appeal that the trial court should have awarded the marital home to petitioner free of any lien to respondent particularly in view of the fact that no maintenance was allowed to petitioner.

██ Respondent's claim concerning "due process" is meaningless. The Illinois Marriage and Dissolution of Marriage Act vests broad powers in the trial court with reference to the disposition of marital property. (Ill. Rev. Stat. 1979, ch. 40, par. 503(c).) Section 503(c) gives the trial court power to divide the marital property "in just proportions" and details the relevant factors to be considered by the court. The supreme court has held the statute does not require "an equal distribution of marital property." (*In re Marriage of Aschwanden* (1979), 82 Ill. 2d 31, 37, 411 N.E.2d 238.) Awarding the respondent part of this property by granting

him a lien was thus within the broad powers of the trial court in this regard.

It seems to us in awarding the lien to respondent the trial judge felt the marital home should be retained by petitioner pending majority or emancipation of the children. The lien allowed respondent represents approximately one-half of the total value of the improved real estate. The issue here is the propriety of this award. Generally, such a distribution of property by the trial judge "will not be reversed unless there is a clear abuse of discretion." (*In re Marriage of Parello* (1980), 87 Ill. App. 3d 926, 933, 409 N.E.2d 461.) We will test this award by applying the 10 factors set forth in the pertinent statute above cited.

(1) The record indicates petitioner made a far greater contribution to acquisition of the vacant real estate than did respondent. The vacant property was originally purchased with petitioner's money. Further, there is evidence of hard physical labor by petitioner in building the home and also in serving as a homemaker.

(2) No other property is set apart to each spouse. Respondent's pension rights are completely awarded to him.

(3) The parties were married in September of 1970 and separated in February of 1977.

(4) Since petitioner has custody of the children, it would seem more fair and logical to give her and the children the right to occupy the family home until majority or emancipation.

(5) There are no obligations or rights arising from a prior marriage.

(6) There is no antenuptial agreement.

(7) Petitioner is employed as a registered nurse. Her earnings are virtually equal to those of respondent. However, the financial needs of petitioner are much greater in view of her custody of the four children. This disparity is not overcome by the child-support allowance of $400 per month.

(8) Provision for the granting of custody of the four children to petitioner places a heavy social burden upon her which should receive careful consideration.

(9) In addition, the judgment bars allowance of maintenance to either party.

(10) Neither of these parties would seem to have any particular future opportunity for acquisition of capital assets.

In our opinion, it would be more fair to the parties to increase the share of petitioner. In addition, allowing respondent a lien for a specific amount may not be fair to him if inflation increases or even continues until ultimate disposition of the property. Consequently, upon remand of this case, we direct a modification of the lien allowed respondent so as to provide that upon disposition of the property respondent should receive

one-third of the net proceeds of the sale. The remaining provisions of the supplemental judgment regarding the time of disposition will remain unchanged, and they are affirmed.

### III.

Both petitioner and respondent have appealed from the allowance of fees to attorney Frana Biederman. The services of this attorney were retained by petitioner who paid her a retainer of $1500. On January 12, 1979, this attorney filed a petition for fees including an itemized hourly statement of services rendered. She showed total legal services to the value of $6,437.50 calculated on the basis of $75 per hour for noncourt time and $125 an hour for court time. After a full hearing, the trial judge entered an order on February 8, 1979, allowing this attorney total fees of $7100. Judgment was entered against respondent for one-half, or $3550, and against petitioner for $2050 after allowing a credit to petitioner of $1500. These judgments were entered in favor of the attorney (Ill. Rev. Stat. 1979, ch. 40, par. 508(b)) and against the parties.

Appended to the order is a notation signed by respondent, dated January 18, 1979, in which he states, "I agree to pay one half of Frana Biederman attorney fee's [sic] or the total sum of $3550." Notice of appeal was served by the respondent upon attorney Frana Biederman, but she has not appeared in these proceedings.

■■ Counsel for petitioner has objected to the attorney's fees allowed against petitioner in the amount of $2050 on the ground that these fees are excessive. Petitioner's attorney cites *Christian v. Christian* (1979), 69 Ill. App. 3d 450, 387 N.E.2d 1254. In considering the merits of this objection, this court will consider the principles set forth in *Christian*. However, this court may also use its own experience and its knowledge of the record herein in fixing a fair and reasonable fee. (*Van Fleet v. Van Fleet* (1977), 50 Ill. App. 3d 172, 175, 365 N.E.2d 1143; *Carvallo v. Carvallo* (1978), 62 Ill. App. 3d 394, 400, 378 N.E.2d 1288.) In our opinion, allowance of a total fee to attorney Frana Biederman in the amount of $5500 is fair and reasonable. The order of February 8, 1979, allowing fees is accordingly modified by reducing the total allowance of fees to attorney Biederman to $5500; with respondent to pay one-half of this allowance or $2750 and petitioner to pay $1250 after crediting her paid retainer of $1500.

However, counsel for petitioner also makes the point in cross-appeal that Frana Biederman withdrew and rendered no additional services to petitioner. The petition filed by attorney Biederman recognizes this because the attorney estimated therein "that it will take an additional $475 to complete this matter." On this basis the balance due attorney Biederman from petitioner is reduced to $775 by allowing petitioner an

additional credit of this $475. The order of February 8, 1979, allowing fees · is reduced to $775 insofar as it pertains to the payment of fees by petitioner and is reduced to $2750 as regards payment of fees by respondent.

Accordingly, the judgment for dissolution of marriage is affirmed. The order for attorney's fees is to be modified as above set forth. The supplemental judgment for disposition of property is affirmed in part and reversed in part, and the cause is remanded with directions.

Affirmed in part; modified in part, reversed in part and remanded with directions.

O'CONNOR and CAMPBELL, JJ., concur.